IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, THIRD DISTRICT

PAUL MALINOWSKI and )
INGRID FLORIO )
 )
        Plaintiffs, )
 )
v. )  NO.
 )
SEATTLE SUTTON'S HEALTHY EATING )
LIMITED LIABILITY COMPANY, )
a Domestic LLC )
        Defendant, )

COMPLAINT AT LAW
COUNT I
DETRIMENTAL RELIANCE

NOW COMES the Plaintiffs Paul Malinowski and Ingrid Florio (hereinafter "Paul and Ingrid") by and through their attorney, The Law Offices of Anthony L. Florio, and for their Complaint against Defendant Seattle Sutton's Healthy Eating Limited Liability Company, (hereinafter "SSHE") and states as follows:

1. At all times relevant hereto, Paul was a distributor for SSHE with offices in Winfield, Roselle and Streamwood, Illinois.

2. At all times relevant hereto, Ingrid was a distributor for SSHE with offices in Elk Grove Village, Illinois.

3. At all times relevant hereto, SSHE, was a supplier of prepared and trademarked meals to Ingrid in Elk Grove Village, Illinois and throughout the suburban area that also supplied Paul in his stores in Winfield, Roselle and Streamwood.

4. At all times relevant hereto, it was becoming more difficult for Ingrid to earn a profit from being the Elk Grove distributor for SSHE's product of healthy foods, as SSHE had raised its price for the product, raised its price for delivery, continued to try to penalize smaller distributors with fines and penalties and other actions some of which violated applicable laws as stated in the following Counts.

5. In October of 2015, Paul desired to purchase the Elk Grove SSHE distributorship from Ingrid and other stores, as it became obvious due to the closing of many smaller distributors, that because of SSHE increase of costs

**GROUP EXHIBIT A**

and processing labor and procedures required to be paid for and performed by distributors to remain in business, that only higher volume could enable a distributor to survive.

6. In October of 2015, Ingrid stated her interest in selling due to Paul's inquiry into the availability of Elk Grove's distributorship of SSHE products, and after discussions and inspections the Plaintiffs orally agreed to sale terms on November 18, 2015, which was formalized by execution of a writing on November 24, 2015. See Exhibit A.

7. As Paul had already been accepted again as a distributor by SSHE when he added Streamwood's distributorship to his stores, his primary concern was to secure a new lease for Ingrid's ideal location at 1080 Nerge Road in Elk Grove, and he immediately sought out the landlord's approval there and secured a new Lease in reliance that SSHE would accept him as the new distributor for Elk Grove as they had in Streamwood.

8. Ingrid's attorney Anthony L. Florio telephoned Ruth Sutton Egofske, a Manager of SSHE and reported the sale to Paul by Ingrid, and received an oral approval and encouragement for the sale, and Ms. Egofske immediately called Paul to verify the transaction. On December 3, 2015, Ms. Egofske emailed a message to Paul, further confirming approval of the transaction, and the date for converting the transaction on the company web site for contact information and other necessary changes. See Exhibit B.

9. In that SSHE closes its business over the last two weeks of December each year, SSHE was given a date of January 1, 2016 to effectuate the transfer from Ingrid to Paul for all web and bookkeeping purposes of SSHE, and the transfer of store equipment and keys to the premises now under the terms of Paul's new lease, was completed immediately, except for payment of monies due Ingrid from Paul, all of which proceeded informally and uneventfully.

10. At all times relevant hereto SSHE operated under an oral umbrella carefully never reducing to any written agreement or manuals and written confirmations of any kind, anything to do with their distributors, in that there were no written restrictions on territorial boundaries, or writings to indicate authorization to be a distributor for a particular area, all to avoid charges that SSHE was in fact in a franchise business with its distributors.

11. As a result of the lack of prior writings having never been given Paul, on all his prior distributorship purchases, he assumed the oral approval and email Exhibit B, meant he was approved as it had been done in the past, and he was ready to operate Elk Grove, and in reliance thereon, he executed the lease, closed the transaction with Ingrid and accepted the January orders already made for sales in January from Ingrid, and taking legal and actual possession of his new leased store in Elk Grove, was ready for delivery of the product from SSHE and opening of the Elk Grove premises by him for Elk Grove customer pick up.

12. In reliance that SSHE was changing ownership of the Elk Grove distributorship to Paul, Ingrid completed all duties and requests of her purchaser and SSHE by removing all personal items from the transferred premises, instructing all customers of the new ownership of Elk Grove and generally complying with all transfers of telephones, telephone numbers and customer records to Paul.

13. Upon receiving the final order from SSHE in December 2015 and upon packing the customer meals in the standard pick up plastic bags, a card with the telephone number of SSHE was observed through the meals plastic sealed container. See Exhibit C.

14. Said card states that the distributor's SSHE store is closing and provides a telephone number that enable Ingrid's customers transferred to Paul, to receive direct delivery from SSHE.

15. In December 2015 a person calling himself "Jim Heaton" claimed to be from SSHE, telephoned Paul and expressed that Elk Grove would be removed from the list of distributors on the SSHE web site, and that SSHE would no longer deliver the product to Elk Grove. Upon hearing from Paul of this conversation, the attorney for Ingrid determined that Mr. Heaton was married to Paula (Sutton) who is a daughter of Seattle Sutton and sister of Ms. Egofske who had authorized the transaction. Ingrid's attorney telephoned Paula and demanded undoing the unilateral termination of Elk Grove without notice.

16. In that no retraction of the threat to close down Elk Grove could be obtained from SSHE, Ingrid's attorney objected to SSHE by Email letter to Ms. Egofske on December 21, 2015. To date no response has been received.

17. That as a direct and proximate result of relying upon the approval of SSHE's transfer to his account of the Elk Grove distributorship, Paul has been damaged in that he reasonably relied upon the transfer going through and executed a

new lease and purchased equipment, fixtures, furnishings, customers and good will from Ingrid, and will be unable to earn the anticipated profits from said location while being compelled to pay rent and office expenses until lease termination, all in excess of an amount of $60,000.00.

18. That as a direct and proximate result of relying upon SSHE having approved the transfer to Paul of the Elk Grove distributorship, Ingrid was damaged in that she gave up a very favorable lease and gave up her SSHE distributorship that was a viable business which she could have continued to operate had she not relied upon SSHE's approval and decent treatment of her purchaser, in an amount in excess of an amount of $35,000.00.

WHEREFORE, Plaintiff Paul Malinowski prays this Court to enter judgment against the Defendant Seattle Sutton Healthy Eating, Limited Liability Company, in the amount of $60,000.00, plus costs.

WHEREFORE, Plaintiff Ingrid Florio prays this Court to enter judgment against the Defendant Seattle Sutton Healthy Eating, Limited Liability Company, in the amount of $35,000.00

## COUNT II
## THEFT OF CUSTOMERS AND
## VIOLATION OF
## 815 ILCS 530
## PERSONAL INFORMATION PROTECTION ACT
## AN ACTION INCLUDING PUNITIVE DAMAGES

NOW COMES the Plaintiffs Paul and Ingrid by and through their attorney the Law Office of Anthony L. Florio, and for their Complaint against Defendant SSHE state as follows:

19-36. Plaintiffs incorporate by reference and includes herein Paragraphs 1 through 18, of Count I as Paragraphs 19 through 36, of Count II.

37. Commencing in early 2015, SSHE began a course of conduct intent upon stealing the personal identity of each distributor's customers.

38. To accomplish the taking of each distributors data base, SSHE required that every distributor go on line to order its delivery of SSHE products, through their web site by having to state the full name and address of each and every customer ordering the products.
39. The customers of each distributor is generally asked by the distributor for their full name, address, telephone numbers and their credit card information to insure their payments of the order taken down and processed by that distributor.
40. Said distributor is required now by SSHE to pass that confidential information to SSHE to develop its data base of customers in said distributor's territory, or the order will not be accepted by SSHE.
41. This requirement, that a distributor must pass on confidential customer information to SSHE, having never secured permission to do so from the customer, is in direct violation of requirements to "provide notice if personal identifying information is accessed" in violation of Section 2719.76 of the Act.
42. At all times relevant hereto, most distributors objected to this kind of suspected illegal action by SSHE, which did not deter SSHE demands for compliance in violation of the applicable laws.
43. At all times relevant hereto, SSHE was willing to violate Privacy rules and regulations for its hidden purpose which became exposed when it attempted to close down Elk Grove distribution offices upon transfer between distributors. SSHE was conspiring to get rid of each distributor one at a time, by prohibiting transfers of their stores without notice. The requirement to disclose customers to place an order has already given SSHE plenty of names for advertising their new plan which is to get rid of all middle men and direct deliver their product to distributors customers.
44. It further is SSHE's plan to allow the larger distributors to continue as they provide income during the transition, as long as their data base is developed, so when they are told that they are no longer needed, they can be eliminated without SSHE loosing their customers business.

WHEREFORE, Plaintiff Paul Malinowski and Ingrid Florio each claim treble damages due them from Defendant Seattle Sutton Healthy Eating in an amount commensurate with three times the actual damages as provided by statute, plus legal fees and costs.

## COUNT III
## VIOLATIONS OF COMPETITION LAWS

NOW COMES the Plaintiff Ingrid by and through her attorney the Law Offices of Anthony L. Florio, and for her Complaint against Defendant SSHE states as follows:

45, 46, and 47, Plaintiff Ingrid incorporates Paragraphs 2, 3, and 4 of Count I, as Paragraphs 45, 46, and 47 of COUNT III.

48. Defendant SSHE did the following acts in violations of Illinois competition laws:

a. In the event a distributor failed to place 10 orders of weekly meals, said distributor although required to pay for delivery, was required to go to another distributor's store to pick up their order.

b. Created a Company store owned and operated by a relative of the owners of SSHE, in Schaumburg, Illinois, to compete with Plaintiffs and other local distributors and develop a customer base for use when distributors in the area could be pushed out of business. Said store was able to compete with a lower sales price for the product.

c. While allowing some distributors to open as many distributorships as they chose to open, interfered with Plaintiffs attempts to expand and refused to deliver their product to would be buyers, and forced others who were trying to sell their distributorships to simply close and take their losses.

d. Required each distributor to purchase one "distributor bag" of product each week to increase its sales.

e. Developed a series of different penalties applying only to distributorships that could not reach certain quotas, similar to the delivery penalty above, such as a $3.00 charge for every weekly set of meals or half weekly orders that totaled less than 525 meals per week.

f. Began an increase in charges to reduce profits so smaller distributors could not continue in the business, such as increasing the delivery charge for its driver who received $24.00 per delivery to the distributor, and while claiming its costs increased, when the gasoline cost per gallon actually lowered from $4.55 per gallon down to $1.95 per gallon, charged an increase to $60.00 per delivery to its distributors.

g. Whenever SSHE advertised a company promotion, any credit given a customer in the advertisement who placed said order through a local distributor, SSHE made the distributor pay for the discounted price by charging the distributor the full price for the order it discounted for that customer, without reimbursement.

h. Began a course of conduct attempting to make the product an unattractive expensive purchase from distributors in favor of direct sales by SSHE on-line by hiding from distributors the on-line costs of customer orders that could only be made to appear on-line, when a distributor was closed and taken off the web and its customers went on line to place the order directly with SSHE home delivery system being put in place, to force out all smaller distributors immediately.

I. While rejecting the acceptance of a distributor's attempted purchaser of their store, and without notice to the existing distributor, SSHE immediately removes the distributor's store from the web site's list without asking if that distributor even chooses to remain in the business, thereby forcing the issue to shut down the distributor. The web site then immediately makes that distributor's territory a company territory for its new home delivery service.

J. Forcing each distributor to tally its total payments to SSHE each quarter and to supply proofs that they paid 4% of that total payment for SSHE advertisements.

K. Began a course of raising the price of the product for distributors that would have to be passed on to customers to often force distributors to eat the increase of $7.00 per order in 2014 and another $10.00 in 2015, (increases depend on size of calories in food order), while SSHE sold the same product on-line approximately $10.00 per order less than the average distributor charges to customers.

49. The above actions by SSHE are each violations of the competitive activities prohibited by the Sherman Act, the Clayton Act, and the Federal Trade Commission Act in that they are each anti-competitive acts that tend to lessen competition and restrain trade, all to the detriment of Plaintiff Ingrid forcing her out of business, causing her to have lost income during the years of working her distributorship, loss of her lease, her fixtures and equipment all to her severe detriment and thereby sustaining damages in the full amount as provided by the jurisdictional restrictions of

this Court plus treble and/or punitive damages, legal fees and Court costs as provided by statute made and provided therefore.

WHEREFORE, Plaintiff Ingrid Florio prays for judgment against the Defendant Seattle Sutton Healthy Eating Limited Liability Company, and for punitive damages, Court costs and legal fees, in an amount not to exceed the jurisdictional limits of this Court.

## COUNT IV
## DAMAGES FOR VIOLATIONS OF ILLINOIS FRANCHISE LAWS

NOW COMES the Plaintiffs Paul and Ingrid, by and through their attorney the Law Offices of Anthony L. Florio and for their Complaint against Defendant SSHE, states as follows:

50., 51., and 52., Plaintiffs incorporate Paragraphs 1., 2., and 3., of COUNT I as Paragraphs 50., 51., and 52., of COUNT IV.

53. At all times relevant hereto, Plaintiffs were granted rights to use SSHE, trademarks to offer, sell or distribute SSHE goods or services to customers. This use became extensive in that signage, telephone listings, bank accounts, and every method of operation of their stores used "SSHE" followed by the Village or Town name where their distributorship was located.

54. At all times relevant hereto, SSHE prescribed the marketing plans and requirements to be used by Plaintiffs in their distributorships including but not limited to the advertisement spending requirement of 4% of their payments to SSHE each week, annual meetings and constant email supervision, with an extensive web site system for ordering and listing customers, lists of trademark materials containing calendars, bags for packing meals for sale, and other required business supplies and paraphernalia.

55. At all times relevant hereto, SSHE controlled all territorial areas permitted to be used by each distributors by refusing delivery to those failing to adhere to its desires, allowing some distributors to sell their business allowing the purchaser of some to continue on in that location while refusing to allow others to transfer their business to another person by refusing to list them on the major source of business which was the SSHE web site, and by refusing to deliver to the new buyer.

56. At all times relevant hereto, SSHE maintained a staff available for answering all customer inquiries about the food product sold for them by the distributors. The assistance provided was extensive and intended to control customer relations as if the distributor's customers were dealing direct with the home office of SSHE in Ottawa, Illinois.

57. The system of payments to SSHE was a rigid procedure insuring SSHE indirect required payments, creatively concealed to remove any obvious appearances of being a franchise fee, as they were labeled as required "distributor bags" to be purchased each week; penalties for order counts below an arbitrary quota; delivery charge penalties for failing to reach certain sales goals; surcharges such as the $3.00 per order price increase, based upon total orders; charging delivery fees for the orders from $24.00 to $60.00; and other padded charges to accomplish its goal of concealment of fees.

58. At all times relevant hereto, SSHE had a clear monopoly in that its distributors had only a single product, SSHE meals supplied by SSHE. There were no other competitors for the distributors and they were at the mercy of SSHE for everything to do with their distributorship. The association of distributors with the SSHE trademark was complete.

59. At all times relevant hereto SSHE required advertisements in the amount of 4%, of the moneys a distributor paid to SSHE for its meals, and required all business to be conducted through its on-line computer program,

60. That said computer program was altered to suit SSHE's decisions as to which distributor was to receive an order from a customer for pick up at the distributors store, supposedly based upon zip codes, of the stores closest to the new customer's zip code, when in fact certain distributors and the SSHE company store in Schaumburg, always received preferential treatment.

61. The payments from each distributor exceeding the actual charges for the meals and the creative add-ons cost each distributor annually a sum far in excess of $500.00.

62. In December 2015, SSHE wrongfully terminated the distributorship in Elk Grove, Illinois causing serious damages to the Plaintiffs, who should have the protection of territory as provided in Illinois Franchise laws.

WHEREFORE, Plaintiffs Paul Malinowski and Ingrid Florio pray this Court as follows:

1. To declare that Defendant is operating as an Illinois franchisor and that it cannot cease doing business with the distributorships owned by the Plaintiffs or any of its distributors without cause.
2. To declare that all the owners of the Defendant's business are personally liable for their actions and damages herein stated pursuant to statute.
3. To enter Judgment against the Defendant for damages in the amount of the maximum jurisdictional amount as permitted by law and for punitive damages in an amount commensurate with Defendant's ability to pay said Judgment, and for legal fees and cost as set forth in the applicable statute.
4. And for what further relief this Court deems meet and just.

Respectfully Submitted,

By _____
Attorney for the Plaintiffs

Anthony L. Florio
The Law Offices of Anthony L. Florio
1824 Hampshire Drive
Hoffman Estates, Illinois 60192
847-956-0007
Atty. No. 25912

# Contract

Agreement made this 24th day of November, 2015, between

Ingrid R. Florio ("Seller") and Paul Malinowski ("Buyer")

The parties to this agreement, in consideration of the mutual covenants and stipulations set out, agree as follows:

Seller desires to sell Seattle Sutton's Healthy Eating distributorship, located at 1080 Nerge Rd., Elk Grove Village IL, 60007, and buyer desires to purchase this location for $21,000.00. Within this purchase, seller will sell and buyer will receive the following:

- 2 True 2-door commercial refrigerators valued at $4000.00
- Miscellaneous office furniture and supplies valued at $1000.00
- Seattle Sutton's Healthy Eating distributorship, customer lists, and good will, valued at $16000.00

The closing shall take place on December 14th, 2015, at the Elk Grove Village location. This agreement will go into effect on 01/01/2016. Upon signing this agreement, the buyer will give seller a check for the full purchase price of $21,000.00.

## SECTION I: INSTRUMENT AS ENTIRE AGREEMENT

This instrument contains the entire agreement between the parties, and no statements, promises or inducements made by either party or agent of either party that are not contained in this contract shall be valid or binding; this contract may not be enlarged, modified or altered except in writing signed by both parties and endorsed on this agreement.

## SECTION II: EFFECT OF AGREEMENT

This agreement shall inure to the benefit of and be binding on the heirs, executors, assignees and successors of the respective parties.

IN WITNESS WHEREOF, the parties have executed this agreement on the day and year first above written.

_Ingrid R. Florio_  
**Signature of First Party**

Ingrid R. Florio  
**Print Name of First Party**

1824 Hampshire Dr.  
**Street Address of First Party**

Hoffman Estates, IL 60192  
**City/State/Zip**

_Paul Malinowski_  
**Signature of Second Party**

Paul Malinowski  
**Print Name of Second Party**

226 Weston Ct  
**Street Address of Second Party**

Bartlett, IL 60103  
**City/State/Zip**

EXH. A

LF801 Contract (04-13)

https://web.mail.comcast.net/service/home/~/?auth=co&loc=en_US&id=1741207&part=2

Page 1

---------- Forwarded message ----------
From: "Ruth Sutton-Egofske" <regofske@gmail.com>
Date: Dec 3, 2015 12:51 PM
Subject: Re: Phone Conversation
To: "Paul Malinowski" <winrosesshe@gmail.com>
Cc:

Thanks, Paul. I already notified David to get the testimonials in the mail to you. Once the form is complete, you can fax it to Seattle at 815.795.3493 or email it to seattle@sshe.com.

Please let me know on the last date of distribution this year (dec 17) and I will have everything converted. It is best to do it at that time since people will be ordering for the new year in December. I want to make sure it is 100% happening before I make this change. Thanks much!

Healthy Regards,

Ruth Sutton Egofske, RN, BS
Seattle Sutton's Healthy Eating
800.442.3438
seattlesutton.com
C 219.765.3395
F 219.213.2062
ruth@sshe.com

**It's Your Life. Your Health. Take Control.**

On Thu, Dec 3, 2015 at 12:44 PM, Paul Malinowski <winrosesshe@gmail.com> wrote:
> Hi Ruth,
> I enjoyed our phone conversation this morning. Sorry if I seemed a bit distracted, but I was making deliveries as we spoke. Just as a reminder, the transfer date for the Elk Grove store will be 1/1/16. If you could talk to the developers, and let them know to switch everything to me as of that day, it would really help out..ie: email address, phone, online orders, all start coming to me as of 1/1/16. Also, can you possibly have David send me some testimonial sheets and whatever paperwork that I would need to give to my customer in Streamwood that has lost over 150 pounds to date. Thanks for all you do and enjoy your weekend!!!!

---

From : Paul Malinowski <winrosesshe@gmail.com>                                     Mon, Dec 14, 2015 04:36 PM

Subject : Fwd: Re: Phone Conversation

  To : ingridr1@comcast.net

---------- Forwarded message ----------
From: "Ruth Sutton-Egofske" <regofske@gmail.com>
Date: Dec 3, 2015 12:51 PM
Subject: Re: Phone Conversation
To: "Paul Malinowski" <winrosesshe@gmail.com>

EX H. B

We regret to inform you that your local SSHE store is closing. However, SSHE can still deliver your fresh meals directly to your door for about the same price or less. For more information please call SSHE at
**1-800-442-3438**

EXH.C

**15M3007642**

Civil Action Cover Sheet (Rev. 05/18/15) CCM 0520

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT / _Third_ DISTRICT

Plaintiff: _Malinowski, Florce_

v.

Defendant: _GSHF_

No. _20153007642_
CALENDAR/ROOM 0205
TIME 09:00
Breach of Contract

Jury Demand ☐ Yes ☒ No

☐ I need language help in court. I speak _____

## CIVIL ACTION COVER SHEET

A Civil Action Cover Sheet shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate general category which best characterizes your action.

**Civil Case (A)**
☐ Tort not Personal Injury
☐ Confession of Judgment
☐ Replevin
☐ Detinue
☐ Foreign Judgment
  Filing Out of State/Out of Country
☐ Registration of Administrative Judgment

**Tort/Personal Injury Case**
Any wrong or damage done to another person, such as, physical pain, illness, or any impairment of physical condition resulting from the careless or negligent actions of others. The most common cases involve auto accident injuries.

☐ Personal Injury Motor Vehicle
☐ Dram Shop
☐ Product Liability
☐ Personal Injury Subrogation
☐ Personal Injury Motor Vehicle Subrogation
☐ Personal Injury Other
☐ Tort Intentional
☐ Property Damage

**Other Litigation Case**
(i.e. credit card agreements, any contract between two or more individuals)

☒ Breach of Contract
☐ Fraud
☐ Consumer Fraud
☐ Breach of Warranty
☒ Statutory Action Complaint

**Civil Case (B)**
☐ Filing an Illinois Court Judgment
☐ Petition for Discovery
  A Petition to take depositions or subpoena records before a case is filed.
☐ Name Change (Suburban Districts only)

**Civil Housing Case**
(i.e. condominium conversion, conservation, demolition/objection to fast track, exterior walls/facades, fire protection, heat call (including Unincorporated Cook County), lead paint new developments, public nuisance, public places of amusement, strategic task force inspections)

☐ Housing
☐ Ordinance Violation
☐ Objection to Fast Track
☐ Criminal Ordinance Violation
☐ Heat Case
☐ Vacant Building

**Pro Se Case Type (First Municipal Civil Division only)**
The Pro Se Court section of the Civil Division resolves disputes between parties where the amount at issue does not exceed $3,000. The party may act as their own attorney. Forms can be completed at the Pro Se desk in Room 602.

☐ Pro Se ($3,000 or less)

**Eviction Case/Civil Forcible/CHA Forcible**
A summary proceeding in which the landlord seeks to restore possession of the premises or payment of rent when the tenant has wrongfully withheld rent or possession of the premises.
☐ Forcible (possession only)    ☐ CHA Forcible
☐ Joint Action (possession and rent)  ☐ CHA Joint Action
☐ Distress for Rent
☐ Mortgage Foreclosure Eviction - Forcible
☐ Mortgage Foreclosure Eviction - Joint Action

Service via email from opposing party/counsel will be accepted at: _____
by consent pursuant to Ill. Sup. Court. Rules 11 and 131.

**Pro Se Only:** ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address: _____

Submitted by: _[signature]_
☒ Atty. No.: _52918_    ☐ Pro se 99500
Name: _A.J. Florio_
Atty. for: _Plaintiff_
Address: _1824 Hampshire Dr._
City/State/Zip Code: _Hoffman 60192_
Telephone: _847 986 0001_

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
Page 1 of 1

2120 - Served  2220 - Not Served   2620 - Sec. of State
2121 - Alias Served  2221 - Alias Not Served   2621 - Alias Sec. of State

Summons (This form replaces CCM 0646, CCM1 0646, CCM1 0651, CCMD 0648, and CCMD 0649-2 thru 6)     (10/06/09) CCM N649

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
____THIRD____ MUNICIPAL DISTRICT

201S3007642
CALENDAR/ROOM 0205
TIME 09:00

**Name All Parties**

PAUL MALINOWSKI & INGRID FLORIO

Plaintiff(s)

v.

SEATTLE SUTTON HEALTHY EATING, LLC

SER Registered Agent Service, Inc. Defendant(s)
416 Main St. Suite 400
Peoria, IL 61602 Address of Defendant(s)

Case No. ____Breach of Contract____

Amount Claimed: $ 100,000.00

Appearance Filing/Return Date: 2/1/16

Status Date: _____

Trial Date: _____

Time: 9:00 a.m.   Room: _____

Please serve as follows: ☐ Certified Mail  ☑ Sheriff Service  ☐ Alias  (Plaintiff check one)

**SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required:

1. To file your written appearance by yourself or your attorney and pay the required fee in:

☐ District 1: Richard J. Daley Center; 50 West Washington, Room 602; Chicago, IL 60602
☐ District 2: 5600 Old Orchard Rd., Rm 136; Skokie, IL 60077   ☐ District 5: 10220 S. 76th Ave., Rm 121; Bridgeview, IL 60455
☐ District 4: 1500 Maybrook Dr., Rm 236; Maywood, IL 60153

on _____, _____, between the hours of 8:30 a.m. and 2:30 p.m.;

☑ District 3: 2121 Euclid, Rm 121; Rolling Meadows, IL 60008   ☐ District 6: 16501 S. Kedzie Pkwy., Rm 119; Markham, IL 60428
on ____Feb 1____, __2016__, before 9:00 a.m.

2. File your answer to the complaint before 9:00 a.m. as required by the applicable subsections of Paragraph 3 or 4 in the NOTICE TO THE DEFENDANT on the reverse side.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service, and not less than 3 days before the day for appearance. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 3 days before the day for appearance.

Atty. No.: 25912      THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

Name: ANTHONY L. FLORIO
Atty. for: PLAINTIFFS
Address: 1824 HAMPSHIRE DRIVE
City/State/Zip: HOFFMAN ESTATES, IL 60192
Telephone: 847.956.0007

WITNESS DOROTHY BROWN DEC 3 1 2015

DOROTHY BROWN, Circuit Court Clerk

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person)

SEE REVERSE SIDE

** Service by Facsimile Transmission will be accepted at: _____
(Area Code)  (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

(10/05/09) CCM N649

Any person wishing to sue or defend a case as an indigent must petition the court to have the fees, costs, and charges associated with the proceedings waived.

Customers may visit www.cookcountyclerkofcourt.org to access the Clerk's filing fees or telephone the Civil Division at (312) 603-5116 with additional questions.

### NOTICE TO PLAINTIFF

You **MUST** select a return day of:
not less than 14 or more than 40 days after issuance of summons if amount claimed is $10,000 or less;
not less than 21 or more than 40 days after issuance of summons if amount claimed is in excess of $10,000.

### NOTICE TO DEFENDANT

1. If the complaint is notarized, your answer must be notarized.

For District 1 Cases Only:

2. On the specified Return Day, one of the following may occur:

    a. If you are sued for $10,000 or less, you need not file an answer unless ordered to do so by the Court.

    (i) If Plaintiff is not present, the case may be dismissed for want of prosecution.

    (ii) If you have not filed an appearance, or you have filed an appearance and are not present, the Plaintiff may obtain an exparte default judgment against you for the amount claimed.

    (iii) If you have filed an appearance and are present on Return Day, trial may be held that day, or may be set for another day certain.

    b. If you are sued for more than $10,000.00, and if you have filed your appearance on time, you must file your answer no later than 10 days after the appearance date (return date) specified on the front of this form. If you have not filed your appearance or answer on time, the Plaintiff may obtain an exparte default judgment against you for the amount claimed. If Plaintiff is not present for the Default call, the case may be dismissed for want of prosecution. If you filed your appearance and have not filed your answer on time the Plaintiff may motion the court to enter a judgment.

3. Late filing of an appearance or answer will not relieve you from a judgment or default order except by court order.

For District 2, 3, 4, 5 and 6 Cases:

4. If you are sued for more than $10,000, you have 10 days from the Return Day to answer or otherwise plea.

5. On the specified Return Day, if you are sued for $10,000 or less, you need not file an answer unless ordered to do so by the Court.

6. On the specified Status/Trial Day, one of the following may occur:
    a. If Plaintiff is not present, the case may be dismissed for want of prosecution.
    b. If you have not filed an appearance, or you have filed an appearance and are not present, the Plaintiff may obtain an ex parte default judgment against you for the amount claimed.
    c. If you have filed an appearance and are present on Status/Trial Day, trial may be held that day, or may be set for another day certain.

The following is applicable to District 3 cases only:

7. This case may/may not be heard on the day for apperance specified in summons.

8. If the claim is for personal injury, or is a civil case in which Plaintiff has filed a jury demand, you will be required to file your appearance in person or by attorney Return Day, and your answer as required by Par. 2(b) above.
These cases will be assigned and heard in the Civil Jury Room _____ unless otherwise ordered by the Presiding Judge. Neither Plaintiff nor Plaintiff's attorney will be required to be present on Return Day. The case will be set for Status at 9:00 a.m., approximately 60 days from the date of filing. Plaintiff and Defendant will be required to appear in court on that status day.

9. Trial Rights of Property, Detinues, and Revivals of Judgment, Pro Se, and Forcible Detainer suits are returnable in Room _____ and are disposed of on a Return Day unless otherwise ordered by the Court.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**